**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**5:11-cv-119-RLV**
**(5:03-cr-34-RLV-1)**

| | |
|---|---|
| RICKY EUGENE EVERHART, ) | |
| ) | |
| Petitioner, ) | |
| ) | **ORDER** |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** comes before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), on Petitioner's Motion to Amend the § 2255 Motion to Vacate, (Doc. No. 5), on Respondent's Motion to Dismiss, (Doc. No. 6), on Petitioner's Motion for Summary Judgment, (Doc. No. 7), and on Petitioner's Motion to Amend/Correct Petitioner's Response to Respondent's Motion to Dismiss, (Doc. No. 9).

**I.     BACKGROUND**

On July 29, 2003, Petitioner was charged in a three-count Bill of Indictment stemming from his participation in a series of drug deals with a confidential informant and undercover officers. (5:03cr34, Doc. No. 1). On March 24, 2004, the grand jury returned a Superseding Indictment, charging Petitioner with one count of conspiracy to possess with intent to distribute fifty (50) grams or more of a mixture or substance containing a detectable amount of cocaine base and with two counts of possessing the same in violation of 21 U.S.C. §§ 846, 841(a)(1). (Id., Doc. No 46). A jury ultimately convicted Petitioner on all three counts. (Id., Doc. No. 54).

The evidence concerning the composition and amount of the controlled substance that is relevant to Petitioner's ineffective assistance of counsel claim can be summarized as follows: At trial, the Government presented the testimony of Kescha Robertson, a forensic chemist who previously worked for both the Federal Bureau of Investigation ("FBI") and the North Carolina State Bureau of Investigation ("SBI"). (Id., Doc. No. 189-2 at 283-313). She was qualified as an expert in chemical analysis of controlled substances. (Id., Doc. No. 189-2 at 286). Robertson testified that the physical exhibits she examined contained "cocaine base." (Id., Doc. No. 189-2 at 290, 294-95, 298-99, 302-03, 305-06). She also testified that "cocaine base" was "commonly referred to as crack cocaine or crack or sometimes rock." (Id., Doc. No. 189-2 at 290). Robertson explained that she conducted preliminary color tests, confirmatory infrared tests and, on the last sample, a gas chromatography ("GC") mass spectrometer analysis. (Id., Doc. No. 189-2 at 311-13). The total weight of the samples that Robertson tested for cocaine base was just under 540 grams. See (Id., Doc. No. 189-2 at 290-306). The last sample she tested was composed of two parts—both cocaine base—just slightly different colors. (Id., Doc. No. 189-2 at 306, 311-13).

At the conclusion of the trial, the jury returned a guilty verdict as to all three counts. The jury made the special finding that each count involved "at least 50 grams of a mixture and substance containing a detectable amount of cocaine base." (Id., Doc. No. 54 at 2). At Petitioner's first sentencing hearing in 2004, he objected to the presentence report based on the Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004). He also objected to an obstruction enhancement. The Court rejected both objections and sentenced Petitioner to 360 months' imprisonment, as well as an alternative sentence of 180 months' imprisonment pursuant

to United States v. Hammoud, 381 F.3d 316 (4th Cir. 2004) (en banc), vacated by 543 U.S. 1097 (2005). (Id., Doc. No. 190 at 2-3; 36-37; 40; 41).

Petitioner appealed this judgment, challenging the sufficiency of the evidence. The United States Court of Appeals for the Fourth Circuit affirmed Petitioner's conviction but vacated his sentence and remanded for re-sentencing in accordance with United States v. Booker, 543 U.S. 220 (2005). See United States v. Everhart (Everhart I), 166 F. App'x 61, 64 (4th Cir. 2006) (per curiam). At his second sentencing hearing in 2006, Petitioner claimed for the first time that the jury did not find him responsible for over fifty (50) grams of "crack" because the statute, indictment, and trial proceeding all referred to the substance as "cocaine base." (5:03cr34, Doc. No. 107 at 5-6; Doc. No. 95 at 1-6). Petitioner also unsuccessfully challenged his sentence under Apprendi v. New Jersey, 530 U.S. 466 (2000), and argued in favor of a downward variance from the advisory Guidelines, but this Court resentenced Petitioner to 360 months in prison. (5:03cr34, Doc. No. 107 at 18-19).

Petitioner appealed his sentence a second time, challenging the jury instructions and jury findings. See United States v. Everhart (Everhart II), 245 F. App'x 316, 317 (4th Cir. 2007) (per curiam). The Fourth Circuit rejected these challenges based on the mandate rule, with the court noting that it had earlier affirmed Petitioner's conviction and, therefore, would not consider new challenges to the conviction. Id. at 317-19. The court then affirmed Petitioner's sentence of 360 months and held that "cocaine base" and "crack cocaine" were interchangeable terms for purposes of determining Petitioner's advisory Guideline range. Id. at 318-19.

Petitioner filed a petition for writ of certiorari in the Supreme Court. The Supreme Court ultimately remanded the case to the Fourth Circuit for reconsideration in light of Gall v. United States, 552 U.S. 38 (2007), and Kimbrough v. United States, 552 U.S. 85 (2007). See Everhart

3

v. United States (Everhart III), 552 U.S. 1292 (2008). The Fourth Circuit then vacated Petitioner's second sentence and remanded the case back to this Court a second time with instructions to reconsider Petitioner's sentence in light of Kimbrough. See United States v. Everhart (Everhart IV), 288 F. App'x 77, 78 (4th Cir. 2008) (per curiam).

This Court held a third sentencing hearing in 2009, during which Petitioner reasserted his argument that "cocaine base is not crack" and raised a "usability" argument pursuant to Amendment 484 to the Sentencing Guidelines for the first time. (5:03cr34; Doc. No. 163 at 6-9). The Court permitted Petitioner to develop this "usability" claim, allowing defense expert Andrew Mason and government expert Jay Pintacuda to testify as to the production and chemical composition of cocaine base. (Id., Doc. No. 164 at 4-29).

Defense expert Andrew Mason testified that to determine the usability of a narcotic like crack cocaine, one would have to destroy at least some part of the substance by consuming it. (Id., Doc. No. 164 at 11-12). Both experts explained that cocaine and cocaine base have different properties, namely their solubility and melting point, whereby their reactions to laboratory tests allow technicians to determine the existence of a detectable amount of cocaine base. (Id., Doc. No. 164 at 13-14, 18-19).

Government expert Jay Pintacuda explained a typical production and distribution process of crack cocaine: the dealer starts out with pure cocaine, which he then begins to "cut" with sodium bicarbonate (baking soda), lidocaine, caffeine, mannitol, or other compounds in order to increase the volume of material he can later sell. (Id., Doc. No. 164 at 20, 22). With respect to the issue of usability, Pintacuda explained that sodium bicarbonate would not be consumed in the vapor when the crack cocaine is heated, but that lidocaine, for example, would be. (Id., Doc. No. 164 at 22-23). Of the samples collected in Petitioner's case, Pintacuda testified that two of

them contained small amounts of lidocaine and caffeine. (Id., Doc. No. 164 at 24). Furthermore, Pintacuda testified that the cocaine base and any other material that is used as a cutting agent is going to be mixed together and used when the crack cocaine is smoked. (Id., Doc. No. 164 at 26).

This Court overruled all of Petitioner's objections to the PSR, but the Court did give him a three-level downward variance based upon the disparity of sentences between Petitioner and his codefendant. (Id., Doc. No. 164 at 40). This variance resulted in a sentence of 235 months' imprisonment. (Id.). Petitioner again appealed this third adjudged sentence to the Fourth Circuit. However, before the Fourth Circuit could resolve the case, the Government filed an unopposed motion to remand the case to allow this Court to further explain the reasons for the sentence and to determine whether this Court expressly considered United States v. Kimbrough. (Fourth Circuit Case No. 09-4212, Doc. No. 34 at 1-2).

In 2010, on remand pursuant to the Government's motion, this Court held a fourth sentencing hearing during which Petitioner raised a number of arguments, one of which included the usability argument as it applies to the Guidelines' definition of "mixture or substance." (5:03cr34, Doc. No. 181 at 7-8). This Court again rejected Petitioner's usability challenge and stated that "the government has met its burden in this case to establish that the crack in this case was usable" and found that "over 500 grams of crack was involved." (Id., Doc. No. 181 at 19). The Court then sentenced Petitioner to 188 months' imprisonment. (Id. at 24). This reduction in Petitioner's sentence from 235 months reflected a change in his criminal history category as required by the amended Guideline section regarding criminal history points. (Id.).

Petitioner then appealed his fourth adjudged sentence to the Fourth Circuit, once again raising the usability argument, among others. The Fourth Circuit affirmed the sentence and held

5

that the mandate rule foreclosed Petitioner from bringing the usability and other claims on his third appeal because he did not do so on his first appeal. See United States v. Everhart (Everhart V), 436 F. App'x 269, 271 (4th Cir. 2011) (per curiam).

On September 1, 2011, Petitioner filed the pending § 2255 motion, in which he alleges that his counsel was ineffective for failing to "alert the Court to USSG Amendment 484 and to object to the volume of cocaine base used to determine Petitioner's offense level." ( 2). Amendment 484, which became effective in 1993, addresses the meaning of "mixture or substance" as used in 2D1.1 and can be found in Application Note 1 to 2D1.1. It excludes "materials that must be separated from the controlled substance before the controlled substance can be used" from the weight of the controlled substance determined for purposes of calculating the offense level. (USSG § 2D1.1, cmt. (n.1)).

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

### A. Petitioner's Motion to Amend the § 2255 Motion to Vacate, (Doc. No. 5), and Petitioner's Motion to Amend/Correct Petitioner's Response to Respondent's Motion to Dismiss, (Doc. No. 9).

The Court first notes that Petitioner has a filed a Motion to Amend the § 2255 Motion to Vacate and a Motion to Amend/Correct Petitioner's Response to Respondent's Motion to Dismiss. Petitioner's Motion to Amend the § 2255 Motion to Vacate is granted, as the Motion to Amend is in substance a motion to supplement Petitioner's arguments in support of the § 2255 Motion to Amend. The Court has considered Petitioner's additional arguments. To this extent, the Motion to Amend the § 2255 Motion to Vacate is granted. The Court has also considered the additional arguments presented in Petitioner's Proposed Amended Response to Respondent's

Motion to Dismiss. To this extent, the Court grants Petitioner's Motion to Amend/Correct Petitioner's Response to Respondent's Motion to Dismiss.

### B. Petitioner's Ineffective Assistance of Counsel Claim Based on Trial Counsel's Failure to Object to the Volume of Cocaine Base Used to Determine Petitioner's Offense Level.

In his sole claim before the Court, Petitioner contends that trial counsel was ineffective during Petitioner's initial sentencing for failing to alert the court to U.S. Sentencing Guidelines ("U.S.S.G.") Manual Amendment 484 and to object to the volume of cocaine base that was used to determine Petitioner's offense level. For the following reasons, Petitioner's ineffective assistance of counsel claim is without merit.

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST., art. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance

prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Amendment 484 to the Guidelines, incorporated into Note 1 to the U.S.S.G. § 2D1.1, provides that the amount of a mixture or substance used to calculate the offense level does not include "materials that must be separated from the controlled substance before the controlled substance can be used." U.S.S.G. App. C, amend. 484. Some examples include cocaine suspended in beeswax or waste water from an illicit laboratory. Id. In support of his claim of ineffective assistance of counsel, Petitioner contends that the Government presented no evidence that the entire 508 grams used to sentence Petitioner were all usable. Petitioner contends that the baking soda that was in the crack cocaine was not usable and should therefore not have been included in measuring the amount of the controlled substance for purposes of calculating the 508 grams. Petitioner argues that

> [a]ccording to the experts baking soda was used to make the crack, baking soda is in the crack after [it is] made and the baking soda must be separated from the crack before the crack is used (inhaled), the cocaine evaporates (separates from the baking soda) and the baking soda doesn't. The baking soda is not usable [a]nd the amount of baking soda mixed with the crack is entirely up to the dealer. The Government did not, however, present any testimony of how much unusable baking soda is actually mixed with the crack.

(5:11cv119, Doc. No. 1 at 4).

Petitioner's usability argument has no merit. The text of the guideline, as well as case law, establish that a "mixture or substance" includes substances mixed with the narcotic for purposing of sale and distribution, and excludes substances only when they are used as part of processing or transporting the narcotic. Thus, the Amendment applies in two situations, neither of which is present here: (1) where the controlled substance is unusable until it is separated from the packaging material it is bonded to or suspended in, and (2) where a non-consumable waste

9

product results from the manufacturing of the controlled substance.  See Lewis v. United States, No. 3:07cv99-3-W, 2007 WL 923082, at *4 n.5 (W.D.N.C. Mar. 25, 2007) (unpublished). Although Note 1 excludes from the definition of "mixture or substance" any "material that must be separated from the controlled substance before the controlled substance can be used," this is not the same as stating that "material not inhaled by the user during the use of the drug" is to be excluded from the total weight, which is what Petitioner's claim regarding the alleged presence of baking soda amounts to.   Indeed, Amendment 484 itself explains that it was intended to address cases in which "the controlled substance is not usable until it is separated from the other substance [to which the controlled substance is bonded]."  Reason for Amendment 484, Appendix C, Volume I.  Accord Chapman v. United States, 500 U.S. 453, 461 (1991) (punishment based on the "total quantity of what is distributed, rather than the amount of pure drug involved," i.e., on "street weight," and reasoning that Congress intended for dilutants and cutting agents to be included in the weight of drugs like cocaine).

Here, Petitioner sold entire crack rocks and charged for their full weight, with every indication that the crack rocks were at the end of the distribution chain and ready for use.  These crack rocks included whatever other mixture or substance was combined with the cocaine base. In other words, the only thing left for the buyer to do was to ignite the crack rocks in order to inhale the cocaine base and other by-products within them.  Thus, Amendment 484 simply does not apply here, and the Court therefore correctly calculated the volume of cocaine base for the purpose of determining Petitioner's offense level.

Petitioner's reliance in his supporting brief on the Fourth Circuit's decision in United States v. Turner, 59 F.3d 481 (4th Cir. 1995), is misplaced.  The Fourth Circuit in Turner addressed whether the liquid solvent carrying LSD, which enabled traffickers to apply the LSD

to carrier media, was a "mixture or substance" within the meaning of Amendment 484. The court concluded that it was not because it "evaporates from the carrier media before the media are ingested," meaning that "wholesale traffickers use the solvent" to get the drug in usable form but consumers do not "use the solvent." Id. at 490. By contrast, with crack cocaine the mixture or substance is smoked in its entirety—even if it is not all inhaled. That is, unlike the liquid solvent carrying LSD, sodium bicarbonate and other cutting agents in crack cocaine are not required to be separated from the controlled substance before use.[1]

In sum, because the sodium bicarbonate and other cutting agents in the crack cocaine were properly included in calculating the volume of crack cocaine sold by Petitioner, counsel's decision not to contest the volume of the crack cocaine mixture used during sentencing was not ineffective assistance of counsel. Furthermore, counsel's failure to have an independent analysis done on the cocaine base mixture was not objectively unreasonable because once it is determined that there was a "detectable amount" of a controlled substance, the entire weight of the mixture or substance is the proper amount used for calculating a sentence. Note (A) following Drug Quantity Table, U.S.S.G. § 2D1.1(c). Thus, purity of the substance, which Petitioner argues should have been independently analyzed, would have in no way influenced his Guideline range. Indeed, Petitioner himself has conceded that the Government proved that the substance was fifty (50) grams of a mixture or substance containing a detectable amount of cocaine base. (Doc. No. 1 at 2.) In sum, Petitioner's ineffective assistance of counsel claim has no merit.

## IV. CONCLUSION

---

[1] The Fourth Circuit's unpublished decision in United States v. Wilson, 175 F.3d 1018 (4th Cir. 1999) (unpublished), also does not apply, as the unusable material in that case was ether, which evaporated before the pcp was used, as the ether evaporated when cigarettes were dipped into a pcp-ether mixture, and the cigarettes were then dried and sold).

For the reasons stated herein, the Court will grant Respondent's motion to dismiss and dismiss the motion to vacate. To this extent, the Court will deny Petitioner's motion for summary judgment.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion to Dismiss, (Doc. No. 6), is **GRANTED**, and Petitioner's Motion for Summary Judgment, (Doc. No. 7) is **DENIED**.

2. Petitioner's Motion to Vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

3. Petitioner's Motion to Amend the § 2255 Motion to Vacate, (Doc. No. 5), is **GRANTED**.

4. Petitioner's Motion to Amend/Correct Petitioner's Response to Respondent's Motion to Dismiss, (Doc. No. 9), is **GRANTED**.

5. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller–El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: August 20, 2012

Richard L. Voorhees
United States District Judge